IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| YVONNE T. COACH, | ) | Civil Action No. 3:04-21960-RBH-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for Supplemental Security Income ("SSI") benefits and DIB on May 31, 2001. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held November 6, 2002, at which Plaintiff appeared and testified, the ALJ issued a partially favorable decision dated March 6, 2003. The ALJ found that Plaintiff had been disabled since February 19, 2002 and was entitled to SSI. The decision constituted a denial of Plaintiff's DIB claim, as the date she was found to be disabled was after her date last insured (June 30, 2001). The ALJ found that Plaintiff was not disabled prior to February 19, 2002, because she could perform her past relevant work as a clerk/secretary.

Plaintiff was fifty-four years old at the time the Commissioner found her disabled commenced. She has a high school education and past relevant work as a clerk/secretary. Plaintiff alleges disability since August 1, 2000, due to degenerative joint disease in her legs and hips, arthritis in her neck and spine, swelling in her right palm, and weakness in her right arm.

The ALJ found (Tr. 28):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2001, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has severe low back and lower extremity pain resulting from degenerative disc disease of the lumbar spine, impairments or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are partially credible to the extent that they are consistent with the findings in this decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. Prior to February 19, 2002 the claimant had the residual functional capacity for light work and was able to perform her past relevant work as a clerk/secretary.

8. Beginning February 19, 2002 and continuing at least through the date of this decision the claimant was unable to perform a substantial range of even sedentary work on a sustained basis and, as such, was

2

        unable to engage in substantial gainful activity at any exertional level.

9.     The claimant is disabled within the meaning of the Social Security Act beginning February 19, 2002 but not prior thereto. As the claimant is insured for Title II benefits only through June 2001 she is not eligible for a period of disability or Disability Insurance Benefits.

On June 28, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision with respect to her DIB denial, but granted her request for review of the ALJ's decision with respect to her SSI application. The Appeals Council found that Plaintiff had been disabled and, therefore entitled to SSI, since December 19, 2001.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months…." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that the Commissioner erred in determining the onset date of her disability. Specifically, she alleges that: (1) the ALJ erred in failing to obtain testimony from a medical expert; (2) the ALJ erred in determining her residual functional capacity ("RFC"); and (3) the ALJ

3

erred in determining her credibility. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The Commissioner's decision that Plaintiff was not disabled prior to December 19, 2001 (because she had the RFC to perform light work and thus could perform her past relevant work as a clerk/secretary), is supported by substantial evidence including medical and non-medical evidence. Significantly, none of Plaintiff's treating or examining physicians placed any restrictions on her ability to perform the physical requirements of work or found that she was totally and permanently disabled by any physical impairment prior to December 2001. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).

On December 5, 1997, Dr. Richard A. Eisenberg, a neurologist at the Southern Neurologic Institute, examined Plaintiff for complaints of weakness in her right arm and hand that extended from her palm to the right side of her neck. Dr. Eisenberg noted that Plaintiff's muscle tone was normal, her strength was full, but there was some fullness over the palm of her right hand and

4

mildly positive Tinel's sign over her median nerve at her right wrist. Tr. 137. An MRI of Plaintiff's cervical spine revealed degenerative disc disease at C4-5 and C5-6 with cord flattening caused by osteophytes, and a shallow central disc herniation at C3-4. Tr. 135-136. On January 8, 1998, Dr. Eisenberg noted that Plaintiff had full strength throughout her upper and lower extremities and mildly positive Tinel's sign over the median nerve at her right wrist. An electromyography and nerve conduction study revealed C5 and C6 radiculopathies, no acute denervation, and possible mild carpal syndrome. Dr. Eisenberg prescribed physical therapy and cervical traction. Tr. 133-134.

On March 24, 2000, Plaintiff was treated in the emergency room of Aiken Regional Medical Center for lower back pain and pain radiating into both of her legs. An x-ray of her lumbar spine revealed mild spondylitic changes and evidence of degenerative disc disease at L4-5 and atherosclerosis. Tr. 100-103.

On September 14, 2000, Plaintiff was examined by Dr. James J. Hill, Jr., a hand and orthopaedic surgeon, for pain in her right upper extremity. Plaintiff told Dr. Hill that she had been laid off from work two weeks earlier. Dr. Hill noted that Plaintiff had a large tumor in her palm, which he opined was a lipoma. Plaintiff reported to Dr. Hill that she had the tumor for many years. Dr. Hill recommended that Plaintiff have an MRI of her hand to evaluate possible removal of the tumor. Tr. 132. There is no evidence in the record that the MRI was performed.

On October 24, 2000, Dr. Martin Greenberg, a neurological surgeon at the Southern Neurologic Institute, examined Plaintiff for complaints of lower back pain. An x-ray revealed

lumbar stenosis at L4-5. Tr. 131.[1]  On June 28, 2001, Dr. Greenberg examined Plaintiff for complaints of new onset of lower back pain.  Plaintiff reported that she had not experienced any recurrent right arm problems.  Dr. Greenberg's examination revealed that Plaintiff had left lateral tenderness with spasm, left sciatic notch pain to light touch and deep palpation, positive straight leg raising test on the left at zero to thirty degrees, negative straight leg raising test on the right, and absent deep tendon reflexes in her lower extremities.  Plaintiff had full motor strength, normal tone, and no atrophy.  Tr. 130.  An MRI of her lumbar spine revealed mild degenerative changes without clear evidence of root displacement or compression at L3-4.  At L4-5 there was evidence of facet arthropathy with mild listhesis and diffuse bulge of disc material with evidence of synovial cyst in the facet joint with probable compression of the left fifth root in transit.  Tr. 128-129.

On August 10, 2001, Plaintiff underwent a left L4-5 microforaminotomy.  She was discharged from the hospital the next day.  Tr. 118.  Dr. Greenberg examined Plaintiff on August 14, 2001, at which time he noted that her left L5 radiculopathy was completely resolved, including her foot weakness.  Straight leg raising tests were negative, and it was noted that Plaintiff had full strength and a normal gait.  Tr. 126.

On November 12, 2001, Plaintiff was examined at the Family MedCenter.  She indicated that Motrin helped her pain.  Tr. 139.  On December 19, 2001, Plaintiff was again examined at the Family Med Center.  She complained that her leg pain had been "killing her."  Tr 165.

---

[1]Plaintiff underwent treatment at Aiken Chiropractic Associates from January 23 to February 26, 2001, for lower back pain, hip pain, radicular pain down both legs, and right-hand tingling and numbness.  Tr. 107-116.

6

On February 19, 2002, Dr. Richard Mendel, a neurological surgeon at the Southern Neurologic Institute, examined Plaintiff for complaints of severe back and leg pain. On March 5, 2002, Plaintiff again complained to Dr. Mendel of severe back and leg pain. Dr. Mendel noted that although Plaintiff's symptoms had improved following her surgery, her condition had since declined. Tr. 159-160.

The Commissioner's decision that Plaintiff was not disabled prior to December 19, 2001 is also supported by the opinions of the State agency physicians who reviewed Plaintiff's medical records and completed physical RFC assessments. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency … [physicians]… regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On August 6, 2001, Dr. Hugh A. Clark, a State agency physician, assessed Plaintiff's RFC based on a review of her medical records. He found Plaintiff had the ability to perform light work with some postural limitations. Tr. 149-156. On January 15, 2002, Dr. Frank K. Ferrell, another State agency physician, affirmed the assessment of Dr. Clark. Tr. 156.

Contrary to Plaintiff's argument that the ALJ improperly evaluated her credibility, the ALJ accepted Plaintiff's testimony in finding that she had a disabling impairment and was disabled as of February 2002.[2] The Commissioner's determination that Plaintiff was not disabled prior to

---

[2]In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's
(continued…)

December 2001 is supported by the medical record (as discussed above) and Plaintiff's activities of daily living. Plaintiff testified that she was able to fix meals at home, wash a small amount of dishes, watch television, visit with relatives, wash small loads of laundry, attend church occasionally, and go to the grocery store with her daughter. Tr. 208, 218-219, 230-231. Additionally, the Commissioner's decision is supported by Plaintiff's lack of need for strong pain medication. See Tr. 213-215, 228-230.[3]

Plaintiff alleges that the ALJ erred by not obtaining testimony from a medical expert in accordance with Social Security Ruling ("SSR") 83-20. The Ruling provides:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at the disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20. Here, the medical evidence did not support a finding that Plaintiff was unable to perform any work activities prior to December 2001 for a continuous period of at least twelve

---

[2](…continued)
allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

[3]Plaintiff contends that her credibility is enhanced by her long work history. The work history provided by her, however, indicates that she was not employed between 1988 and 1997. Tr. 59. Further, her Earnings Record indicates no earnings in 1980 and from 1986 to 1988. See Tr. 54-55.

months. An earlier onset disability date would be inconsistent with the medical evidence of record. The medical record reveals that on August 14, 2001 (just four days after her surgery), Dr. Greenberg noted that Plaintiff's left L5 radiculopathy had completely resolved and she had negative straight-leg raising tests, full strength, and a normal gait. Tr. 126. There is no indication of further medical treatment until November 12, 2001, when Plaintiff reported that Motrin helped relieve her pain. Tr. 139. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986). Plaintiff complained to her family physician that her legs were "killing her" in December 2001, for which Celebrex was prescribed. Despite her allegations that her back impairment was disabling, Plaintiff did not return to a physician at the Southern Neurologic Institute until February 19, 2002. Tr. 160.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

9

RECOMMENDED that the Commissioner's decision be affirmed.

                                          Respectfully submitted,

                                          s/Joseph R. McCrorey
                                          United States Magistrate Judge

January 31, 2006
Columbia, South Carolina