IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Yvonne T. Coach, | ) | C/A No.: 3:04-21960-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Yvonne T. Coach, brought this action pursuant to § 205(g) of the Social Security Act, as amended, and 42 U.S.C. §405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides: "[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964); see, e.g., Daniel v. Gardner, 404 F.2d 889 (4th Cir. 1968); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976). This standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. See, e.g., Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported

1

by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As noted by Judge Sobeloff in Flack v.Cohen, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Id. at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58.

## Administrative Proceedings

The plaintiff filed her current application for DIB and Supplemental Security Income ("SSI") on May 31, 2001 alleging a disability onset date of August 1, 2000, due to degenerative joint disease in her legs and hips; arthritis in her neck and spine; and swelling of her right hand and palm. Her application was denied initially and upon reconsideration. The plaintiff then requested a hearing before an administrative law judge (ALJ) which was held November 6, 2002. The ALJ issued a decision on March 6, 2003, finding that the plaintiff became disabled on February 19, 2002 but that she had not been disabled prior to June 30, 2001, the date she last met the insured status requirements for entitlement to disability benefits under Title II of the Act. The ALJ further found that the plaintiff was entitled to SSI benefits as of February 19, 2002. The Appeals Council found that the plaintiff became disabled and entitled to SSI benefits on December 19, 2001, which was still after the date the plaintiff was insured for disability benefits under the Act. The ALJ's decision as modified by the Appeals Council decision became the Commissioner's "final decision" for purposes of judicial review. *See* 42 U.S.C. §405(g); 20 C.F.R. §404.981 (2003).

The ALJ made the following findings in this case:

2

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2001, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has severe low back and lower extremity pain resulting from degenerative disc disease of the lumbar spine, impairments or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are partially credible to the extent that they are consistent with the findings in this decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. (20 CFR §§ 404.1527 and 416.927).

7. Prior to February 19, 2002 the claimant had the residual functional for light work and was able to perform her past relevant work as a clerk/secretary.

8. Beginning February 19, 2002 and continuing at least through the date of this decision the claimant was unable to perform a substantial range of even sedentary work on a sustained basis and, as such, was unable to engage in substantial gainful activity at any exertional level.

9. The claimant is disabled within the meaning of the Social Security Act beginning February 19, 2002 but not prior thereto. As the claimant is insured for Title II benefits only through June 2001 she is not eligible for a period of disability or Disability Insurance Benefits.

## Facts

The plaintiff was born on May 28, 1947; she was 54 years old at the time her insured status

expired on June 30, 2001. She is a high school graduate with prior work experience as a clerk/secretary and cashier.

## Appeal from the Commissioner's Decision

Pursuant to Local Civil Rule 83.VII.02(A), D.S.C, this action was referred to United States Magistrate Judge Joseph R. McCrorey. On January 31, 2006, Magistrate Judge McCrorey filed a Report and Recommendation ("the Report") suggesting that the decision of the Commissioner be affirmed. The plaintiff filed objections to the Report on February 3, 2006.    The Magistrate Judge concluded that the record contains substantial evidence to support the conclusion of the Commissioner that plaintiff be denied benefits.

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

## Medical Evidence

The medical evidence in the case at bar is summarized by the Magistrate Judge as follows:

On December 5, 1997, Dr. Richard A. Eisenberg, a neurologist at the Southern Neurologic Institute, examined Plaintiff for complaints of weakness in her right arm and hand that extended from her palm to the right side of her neck. Dr.Eisenberg noted that Plaintiff's muscle tone was normal, her strength was full,but there was some fullness over the palm of her right hand and mildly positive Tinel's sign over her median nerve at her right wrist. Tr. 137. An MRI of Plaintiff's cervical spine revealed degenerative disc disease at C4-5 and C5-6 with cord flattening caused by osteophytes, and a shallow central disc herniation at C3-4. Tr. 135-136.

On January 8, 1998, Dr. Eisenberg noted that Plaintiff had full strength throughout her upper and lower extremities and mildly positive Tinel's sign over the median nerve at her right wrist. An electromyography and nerve conduction study revealed C5 and C6 radiculopathies, no acute denervation, and possible mild carpal syndrome. Dr. Eisenberg prescribed physical therapy and cervical traction. Tr. 133-134.

On March 24, 2000, Plaintiff was treated in the emergency room of Aiken Regional Medical Center for lower back pain and pain radiating into both of her legs. An x-ray of her lumbar spine revealed mild spondylitic changes and evidence of degenerative disc disease at L4-5 and atherosclerosis. Tr. 100-103.

On September 14, 2000, Plaintiff was examined by Dr. James J. Hill, Jr., a hand and orthopaedic surgeon, for pain in her right upper extremity. Plaintiff told Dr. Hill that she had been laid off from work two weeks earlier. Dr. Hill noted that Plaintiff had a large tumor in her palm, which he opined was a lipoma. Plaintiff reported to Dr. Hill that she had the tumor for many years. Dr. Hill recommended that Plaintiff have an MRI of her hand to evaluate possible removal of the tumor. Tr. 132. There is no evidence in the record that the MRI was performed.

On October 24, 2000, Dr. Martin Greenberg, a neurological surgeon at the Southern Neurologic Institute, examined Plaintiff for complaints of lower back pain. An x-ray revealed lumbar stenosis at L4-5. Tr. 131.1 On June 28, 2001, Dr. Greenberg examined Plaintiff for complaints of new onset of lower back pain. Plaintiff reported that she had not experienced any recurrent right arm problems. Dr. Greenberg's examination revealed that Plaintiff had left lateral tenderness with spasm, left sciatic notch pain to light touch and deep palpation, positive straight leg raising test on the left at zero to thirty degrees, negative straight leg raising test on the right, and absent deep tendon reflexes in her lower extremities. Plaintiff had full motor strength, normal tone, and no atrophy. Tr. 130. An MRI of her lumbar spine revealed mild degenerative changes without clear evidence of root displacement or compression at L3-4. At L4-5 there was evidence of facet arthropathy with mild listhesis and diffuse bulge of disc material with evidence of synovial cyst in the facet joint with probable compression of the left fifth root in transit. Tr. 128-129.

On August 10, 2001, Plaintiff underwent a left L4-5 microforaminotomy. She was discharged from the hospital the next day. Tr. 118. Dr. Greenberg examined Plaintiff on August 14, 2001, at which time he noted that her left L5 radiculopathy was completely resolved, including her foot weakness. Straight leg raising tests were negative, and it was noted that Plaintiff had full strength and a normal gait. Tr. 126.

On November 12, 2001, Plaintiff was examined at the Family MedCenter. She indicated that Motrin helped her pain. Tr. 139.

On December 19, 2001, Plaintiff was again examined at the Family Med Center. She complained that her leg pain had been "killing her." Tr 165.

On February 19, 2002, Dr. Richard Mendel, a neurological surgeon at the Southern Neurologic Institute, examined Plaintiff for complaints of severe back and leg pain.

On March 5,2002, Plaintiff again complained to Dr. Mendel of severe back and leg pain. Dr. Mendel noted that, although Plaintiff's symptoms had improved following her surgery, her condition had since declined.  Tr. 159-160.

Report and Recommendation, pages 4-6.

## **Objection**

The plaintiff makes the following objection to the Report:

***The Magistrate failed to address the Plaintiff's ability to return to work following back surgery, which is the primary issue in the Plaintiff's case.***

The plaintiff objects on the basis that the Report does not address whether she was able to return to work after back surgery.  Specifically, the plaintiff contends that she was not able to work during the four month period between her surgery on August 10, 2001 and the time when the Appeals Council concludes that she was disabled on December 19, 2001.  Plaintiff asserts that the ALJ concedes that the plaintiff was suffering severe pain from June of 2001 through her surgery in August of 2001 and that the ALJ also concedes that "when the Plaintiff had earlier attempted to work 'less than three months' that due to the short duration of her work 'this work is not determined to be substantial gainful activity." Therefore, the plaintiff argues that she should at a minimum be entitled to disability benefits beginning in June of 2001, "when the Plaintiff reported her condition had worsened significantly." (Objections, page 3)

## **Analysis**

Under the Social Security Act, the plaintiff's eligibility for benefits hinges on whether she "is

6

under a disability . . ." 42 U.S.C. §423(a)(1)(D). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." Id., §423(d)(1)(A). Of course, the burden is on the claimant to establish such disability. Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Suppart P. 20 C.F.R. §404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that he could not perform his customary occupation as a result of physical or mental impairments. Taylor v. Weinberger, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. §404.1560(b). These factors include the individual's (1) "residual functional capacity," Id., §404.1561; (2) age, Id., §404.1563; (3) education, Id., §404.1564; (4) work experience, Id., §404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, Id., §404.1561.

If the assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. Id. §404.1651. The interrelation between these vocational fators is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §404.1520, it must be determined: (1) whether the

claimant is currently gainfully employed, (2) whether he suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents him from returning to his previous work, and (5) whether the impairment prevents him from performing some other available work.

The SSA defines "onset date of disability" as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. In determining the onset date of disability, relevant factors include the individual's allegation, work history, and medical evidence. Id. That ruling specifically states that "the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." Id. "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months . . ." Id.

Plaintiff cites Bailey v. Chater, 68 F.3d 75 (4th Cir. 1995) in support of her position that the case should be remanded for further proceedings. In Chater, the Fourth Circuit found that the award of benefits for a period of six months before certain consultative examinations was arbitrary and not supported by the substantial evidence. The Fourth Circuit cited SSR 83-20 and remanded the case for further proceedings before the ALJ. The Court ordered the ALJ to obtain the assistance of a medical advisor and distinguished cases where the ALJ "had a complete chronology of the claimant's condition throughout the relevant time period."

SSR 83-20 states:

> **In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped**

8

**working.** How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. **At the hearing, the administrative law judge [ALJ] should call on the services of a medical advisor when onset must be inferred.** If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made. (emphasis added)

In the case at bar, the ALJ had a complete medical chronology and determined that "following (back surgery), the claimant reported immediate improvement in her symptoms . . . The record subsequently shows no further complaints of any kind for a period of over six months until she saw Dr. Mendel on February 19, 2002 . . ." (Page 5, ALJ opinion). The Appeals Council corrected the onset date to December 19, 2001 based on the plaintiff's complaint of leg pain. The Appeals Council states:

> A treating physician note indicates that the claimant was doing well on August 14, 2001 (Exhibit 5F/1). Another note, dated November 12, 2001, indicates Motrin had helped the pain, and there was no indication that the pain was significant (Exhibit 6F/2) The first record of a significant problem with pain after the surgery was a note dated December 19, 2001, which indicates the claimant was complaining of leg pain which was "killing" her (Exhibit 10F/5). Based on this evidence, the /appeals Council finds that the claimant was limited to less than a significant range of sedentary work beginning December 19, 2001.

The Court finds that the Commissioner's finding of an onset date of December 19, 2001 was supported by the substantial evidence of record. Even if a finding were made that the plaintiff was disabled beginning in June of 2001, when her back pain became sufficiently severe to require surgery in August of 2001, the record contains no medical evidence to contradict the fact that the plaintiff recovered from the surgery and was not disabled between August of 2001 and December of 2001, when she again began to suffer back pain. In an examination on August 14, 2001, occurring after the back surgery on August 10, 2001, the claimant's physician, Dr. Greenberg, opined that the plaintiff's left L5

9

radiculopathy was resolved and that she had full strength and normal gait. Tr. 126. Therefore, the plaintiff has not sustained her burden of meeting the continuous twelve-month duration requirement following the June 2001 back problems.[1]

After carefully reviewing the record, the applicable law, and the positions of the parties, the Court overrules the plaintiff's objection, adopts the Report and Recommendation of the Magistrate Judge, and accepts the determination of the Commissioner that the plaintiff has been disabled since December 19, 2001, but that since she is insured for disability benefits only through June of 2001, that she is not eligible for disability benefits under the Social Security Act.

**IT IS SO ORDERED**.

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

March 31, 2006
Florence, South Carolina

---

[1] While the Appeals Council changed the date of onset by two months from February 2002 to December 2001, and therefore resulted in a period of time of interruption in her alleged disability period of four months instead of six months, the plaintiff concedes in her objections that, "certainly if the ALJ was correct that the Plaintiff had been able to return to work for 6 months, the Plaintiff would have to concede that this was a long enough period of time that it would interrupt her alleged disability, and she would not been entitled to the earlier period of time."